## BORON OIL COMPANY v CALLANAN

1. TRADE REGULATION—TRADE NAME—UNFAIR COMPETITION.

One cannot be found guilty of unfair competition in the use of a name where the facts indicate no competition, ordinarily; there is an exception to this rule, however, where an outstanding and widely known name, made valuable by the owner, is protected.

2. TRADE REGULATION—TRADE NAME—ASSOCIATION OF NAME—SECONDARY MEANING.

Words or symbols used in connection with one's goods, services, or business or physical attributes of goods not ordinarily appropriable as a technical trademark or a trade name, are deemed to have acquired a "secondary meaning" when they have become associated in the minds of purchasers or customers with the source or origin of goods or services rather than with the goods or services themselves.

3. TRADE REGULATION—TRADE NAMES—UNFAIR COMPETITION—SECONDARY MEANING.

Plantiff oil company which used the name "Boron" in marketing its gasoline and oil products failed to show unfair competition in the use of "Boron" in the trade name of defendant's realty business where the parties were not in competition, and where plaintiff's showing of long use of its name in metropolitan Detroit and extensive advertising with the goal of making the name Boron synonymous with plaintiff's oil products failed to establish that the name had acquired a secondary meaning by association in the minds of purchasers or customers with the source or origin of plaintiff's goods or services.

REFERENCES FOR POINTS IN HEADNOTES

[1] 52 Am Jur, Trademarks, Tradenames, and Trade Practices § 93.

[2, 3] 52 Am Jur, Trademarks, Tradenames, and Trade Practices § 72 *et seq.*

Appeal from Wayne, Russell Bradley, J. Submitted Division 1 October 4, 1973, at Detroit. (Docket No. 14892.) Decided November 28, 1973. Leave to appeal denied, 391 Mich 775.

Complaint by Boron Oil Company against Evan Callanan, doing business as Boron Realty, for injunctive relief, accounting of profits, and damages, arising out of unfair competition. Judgment for defendant. Plaintiff appeals. Affirmed.

*Honigman, Miller, Schwartz & Cohn* (by *Robert A. Fineman),* for plaintiff.

*Smith, Pantel, Katzman & Mitoff, P. C.,* for defendant.

Before: DANHOF, P. J., and FITZGERALD and WALSH,* JJ.

FITZGERALD, J. This action is one of unfair competition for use of defendant's trade name—Boron Realty.

Plaintiff is a large Ohio corporation, a subsidiary of Standard Oil Corporation, and has long used the name Boron in the marketing of its gasoline and oil products. Plaintiff has been qualified to do business in Michigan since 1955. However, it has been only since 1967 that it has expended major sums of money in actively entering the market in the metropolitan area. Plaintiff involved itself in substantial real estate dealings, acquiring about 300 parcels of land worth over 22 million dollars. Plaintiff also expended very substantial monies in an advertising campaign to introduce its products to the Michigan consumer.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Defendant Callanan, an attorney, has practiced law and sold real estate in Michigan for many years. Prior to December 1968, his real estate business went under the assumed name of Garfield Real Estate. Defendant admits he was aware of the Boron Oil Company at the time he changed the real estate firm's name.

Plaintiff's prayer for injunctive relief, an accounting of profits, and for actual and punitive damages was denied and the suit dismissed because the trial court found plaintiff stated no cause of action.

The court made findings of fact that there would be no likelihood of confusion over the names. The court also found that the word "Boron" had acquired no secondary meaning in which plaintiff had a property interest.

From the various issues presented, we can restate the issue thus: Whether the plaintiff's trade name has become so identified with its business that use by defendant, not in any way in competition with plaintiff, would amount to an unfair business practice?

Plaintiff claims, in essence, to have an exclusive right to use the trade name *Boron* and argues persuasively that a court is not free to disregard the nature of the term Boron (a non-metallic element) as applied to the goods and services here involved. It argues that the word *Boron* as applied to plaintiff's oil and gasoline products is far overshadowed by the association in the public mind of the corporation itself. On this basis, even without a secondary meaning, plaintiff says that the term or word *Boron* is entitled to protection.

The defendant, on the other hand, argues that there is no secondary meaning to the word *Boron,* stating that since there is no competition between

the parties, and the business is limited to the western suburbs of Detroit, plaintiff's prayer for injunction was properly denied. Defendant says that the oil company cannot be allowed to have exclusive use of the term *Boron* as against the entire world unless it can show that there is either direct competition between plaintiff and defendant or actual confusion in the minds of the public.

Ordinarily, one simply cannot be found guilty of unfair competition when the facts indicate no competition. *Good Housekeeping Shop v Smitter,* 254 Mich 592; 236 NW 872 (1931); *Burns v Schotz,* 343 Mich 153; 72 NW2d 149 (1955); *Ex-Cell-O Corp v Sage,* 347 Mich 210; 79 NW2d 497 (1956). There is, however, a longstanding exception to this rule where an outstanding and widely known name, made valuable by the owner—Hudson's Bay Company—is pirated. *Governor & Co v Hudson Bay Fur Co,* 33 F2d 801 (D Minn, 1928). In that case, defendant was enjoined from use of the plaintiff's trade name, even where plaintiff was *not* in actual competition.

Words or symbols used in connection with one's goods, services, or business, or physical attributes of goods, not originally appropriable as a technical trademark or a trade name, are deemed to have acquired a "secondary meaning" when they have become associated in the minds of purchasers or customers with the source or origin of goods or services rather than with the goods or services themselves. *Armstrong Paint & Varnish v Nu-Enamel Corp,* 305 US 315; 59 S Ct 191; 83 L Ed 195 (1938); *Barton v Rex-Oil Co,* 2 F2d 402; 40 ALR 424 (CA 3, 1924).

In determining whether a plaintiff has proved his case, certain elements must be established; length of use of the symbol or mark, nature and

extent of popularizing and advertising the symbol, and the efforts expended by plaintiff in promoting the connection in the minds of the general public of his mark or symbol with a particular product. See Anno: *Doctrine of secondary meaning in the law of trademarks and of unfair competition,* 150 ALR 1067.

Of necessity, each case turns on its own facts. *Good Housekeeping Shop v Smitter, supra.* The test to be applied by the courts on the question of similarity of names is the likelihood of deceiving an ordinary purchaser who is using ordinary care. In applying that test, regard must be had to the nature and physical requirements of the article itself, its cost, the class of persons who purchase it, and the circumstances of its purchase. *Federal Engineering Co v Grieves,* 315 Mich 326; 24 NW2d 138 (1946).

Actual confusion of customers, clients, or the public at large does not need to be shown; it is sufficient if the acts of the defendant indicate that probable confusion will occur. *Metal Craft Co v Metalcraft Heater Corp,* 255 Mich 642, 645; 239 NW 364, 365 (1931). Indeed, plaintiff need not show that a defendant benefited from appropriating his trade name. Injury to plaintiff is sufficient. *220 Bagley Corp v J Freud Land Co,* 317 Mich 470; 27 NW2d 59 (1947).

Michigan law appears clear that in order to enjoin the use of a trade name, there must be competition, except in instances of a very well known name. *Good Housekeeping, supra; Burns, supra; Ex-Cell-O, supra.*

The tendency has been, however, in recent years, for courts to pull back somewhat from the rigid requirement which insisted that in order to amount to an infringement, the parties had to be

competitors. *Polaroid Corp v Polaraid Inc,* 319 F2d 830 (CA 7, 1963); *Dunhill of London v Kasser Distillers, d/b/a Dunhill Distillers,* 350 F Supp 1341 (ED Pa, 1972).

In the *Polaroid* case, the plaintiff camera manufacturer was granted an injunction against an Illinois-based refrigeration and air conditioning company which had adopted the name "Polaraid". Citing the *Yale* decision and another Illinois decision in *Lady Esther, Ltd v Lady Esther Corset Shoppe, Inc,* 317 Ill App 451; 46 NE2d 165; 148 ALR 6 (1943), as controlling, the Court alluded to a number of unfair competition cases reaching the same result in other jurisdictions.

In *Triangle Publications, Inc v Standard Products, Inc,* 241 F Supp 613 (ED Pa 1965), the defendant was enjoined from use of the term "Miss Seventeen" on its luggage because the court found this an unfair appropriation of plaintiff's "Seventeen" magazine trade name. Likewise, in *Allstate Insurance Co v Allstate Inc Co,* 307 F Supp 1161 (ND Tex 1969), defendant's car wash business was enjoined from using plaintiff insurer's prominent trade name.

Plaintiff most adequately states its case, but on Michigan law it must lose unless it can establish a "secondary meaning". On the facts presented, it has established (1) long use; (2) use in the metropolitan area, with the notable exception of defendant; (3) extensive advertising with the goal of making the term *Boron* synonymous with its product. However, the "secondary meaning" is lacking.

While the line is fine, a review of the record leads us to affirm the trial court.

Affirmed. Costs to appellee.

All concurred.